IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LESIA McCOLLOUGH          )
                          )
        Plaintiff,        )
                          )
        v.                )          1:09CV192
                          )
TOWN OF SOUTHERN PINES,   )
JOHN LETTENEY             )
                          )
        Defendants.       )

MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

On March 22, 2010, the Town of Southern Pines and John
Letteney (collectively, "Defendants") filed a Motion for Summary
Judgment, as well as briefs and exhibits in support of the
Motion. (Docs. 58, 59.) On April 10, 2010, Lesia McCollough
("Plaintiff") filed a brief and exhibits in opposition to
Defendants' Motion. (Docs. 68, 69.) Defendants filed a reply to
Plaintiff's brief on April 16, 2010. (Doc. 79.) For the reasons
that follow, Defendants' Motion is granted.

I.   Factual Background

The following facts are presented in the light most
favorable to the plaintiff. Plaintiff Lesia McCollough was hired
as a Patrol Officer Trainee by Defendant Town of Southern Pines

on June 12, 2001.  (Defs.' Mem. Law Supp. Mot. Summ. J. (Doc. 59) Ex. 3.)  One of only a few female police officers on the force, tensions arose between Plaintiff and some of the male officers during her second year with the police department.  Plaintiff filed a complaint in September 2002 against a male officer who failed to back her up on a call.  (Defs.' Mem. Ex. 24.) Plaintiff had been told that this same officer made derogatory comments about having to work with female officers.  (Id.)  Just a few weeks later, Plaintiff submitted a memorandum to then Chief of Police Gerald Galloway informing him about two incidents involving Plaintiff's supervising officer.  (Id. Ex. 27.) Plaintiff complained that the officer had an "intimidating attitude" and had "belittled" her by making disparaging comments about her investigatory competence in front of a junior officer. (Id.)  Chief Galloway investigated both of Plaintiff's complaints and addressed the issues with the offending officers and with Plaintiff.  (Id. Exs. 28-31.)  In September 2004, Plaintiff was subpoenaed to testify in a deposition in connection with a discrimination suit filed against the Town of Southern Pines by another female officer.  (Id. Ex. 32; Pl.'s Dep. (Doc. 68) at 6.) In that deposition, Plaintiff stated that she personally had never felt harassed or discriminated against in her job, but that she knew of other female officers who had complained of discriminatory treatment.  (Defs.' Mem. Ex. 32.)

During and subsequent to the time of these incidents, Plaintiff was promoted regularly (Defs.' Mem. Ex. 3-6) and received excellent performance evaluations (Boyce Decl. (Doc. 68) Exs. 5-6), despite a couple of incidents that resulted in written reprimands being placed in her personnel file.[1] (Defs.' Mem. Exs. 38-39.) In 2005, Gerald Galloway retired, and John Letteney ("Defendant Letteney") replaced him as the new Chief of Police. (Def. Town of Southern Pines Am. Resps. Pl.'s First Set Interrogs. (Doc. 68) 3, 5.) Upon Defendant Letteney's arrival in the department, he met with each member of the force and solicited feedback from the employees through questionnaires, asking what they thought the police department did well and what they thought could be improved. (Defs.' Mem. Exs. 33-35.) In her questionnaire, Plaintiff responded that she felt there was a lack of professionalism and respect among the officers. (Defs.' Mem. Ex. 34.) She also suggested making more training opportunities available and instituting a better mentorship system for junior officers. (Id.) She expanded on these comments in typewritten notes that she prepared in advance of her meeting with Defendant Letteney. (Id. Ex. 35.) In those notes,

---

[1] Plaintiff received a written reprimand in 2004 in connection with a traffic accident that caused damage to her patrol car and another vehicle (Defs.' Mem. Ex. 38), and she received a written reprimand in 2005 for refusing to respond to a call from the police dispatcher, a violation of police department General Order 86-3, Communications Center Procedures, Communications System Rules (A). (Id. Ex. 39.)

Plaintiff discussed the "underlying attitude or stigma" that she felt some male officers held toward female officers. (Id.) She described generally how male officers belittled female officers, and she proposed having clear-cut guidelines that would deter male officers from behaving disrespectfully toward their female counterparts. (Id.) Plaintiff later repeated these feelings in discussions with Captain Carol Wright (a female) in March 2007 and Defendant Letteney in August 2007. (Compl. (Doc. 1) ¶¶ 42, 45; Defs.' Mem. Ex. 23.) During the latter conversation, Plaintiff expressed concerns that she was not being assigned officer trainees or being selected to participate in Special Response Team ("SRT") raids because she was a female. (Defs. Mem. Ex. 23.)

During her evening shift on October 16, 2007, Plaintiff arrested James Verbal, a suspect in a breaking and entering case, when he turned himself in at the Southern Pines police station. (Pl. Sworn Statement to CJSD (Doc. 68) 1-2.) Plaintiff and James Skelton, the trainee officer she was supervising, processed Verbal and conducted the search incident to arrest. (Defs.' Mem. Ex. 1). They discovered on Verbal's person a plastic baggie containing a small, white, rock-like substance. (Id. Exs. 1, 10; Pl. Sworn Statement to CJSD (Doc. 68) 1-2.) Plaintiff questioned Verbal outside the presence of Skelton and obtained a statement from Verbal regarding the breaking and entering. (Defs.' Mem.

Exs. 10, 14.)  Plaintiff did not mention the substance in the baggie to Verbal during the course of the interrogation, and she later threw the bag away in the trash receptacle behind the police station.  (Defs.' Mem. Ex. 10.)  Plaintiff stated after the incident that she knew at the time that the substance was not crack or another controlled substance based on her training and experience (Defs.' Mem. Ex. 10(a); Pl.'s Br. Opp. Defs.' Mot. Summ. J. (Doc. 68) 2; Pl. Sworn Statement to CJSD (Doc. 68) at 1.)  However, her contemporaneous reports about the event indicated that it "appeared" to be a controlled substance and that she was not sure what it was.[2]  (Defs.' Mem. Exs. 1; 10.)  After taking Verbal's statement, she transported him to the magistrate in Carthage, where he was released on an unsecured bond.  (Defs.' Mem. Ex. 10 at 2; Pl.'s Br. 2.)  Plaintiff did not

_____

[2] In a Daily Observation Report that Plaintiff filed in connection with her supervision of Patrol Trainee James Skelton, Plaintiff reported that "PTO Skelton assisted in handcuffing Mr. Verbal.  PTO Skelton also performed an extremely thorough search incident to arrest recovering from [Verbal's] front left pocket what appeared to possibly be a crack crumb."  (Defs.' Mem. Ex. 1 at 3.)  The day after the Verbal incident, Plaintiff submitted a memorandum to Defendant Letteney, Captain Wright, and her supervising lieutenant in which she stated that she "did not charge Mr. Verbal for the object based on several different reasons.  Based on my training and experience as well as due to the texture and consistency of the object (especially with the way it crumbled so easily) I was not even sure if it actually was a controlled substance."  (Id. Ex. 10 at 2.)  There is nothing in the record to indicate that the substance was recovered from the trash receptacle, so it does not appear that the substance was tested to determine if it was, in fact, crack cocaine or another controlled substance.

mention the substance found on Verbal to the magistrate, nor did she charge Verbal with any crime related to the substance. (Defs.' Mem. Ex. 10 at 2.) She then gave Verbal a ride back to Southern Pines in her patrol car. (Pl. Sworn Statement to CJSD (Doc. 68) at 2.) Plaintiff reported the incident to Sergeant Dozier, the officer who had been investigating the break-ins, the next morning. (Dozier Dep. (Doc. 68) at 60; Pl.'s Br. 2.) Sergeant Dozier expressed concerns about how Plaintiff had handled Verbal's arrest, specifically her disposition of the suspected controlled substance and her failure to bring it to the magistrate's attention. (Defs.' Mem. Ex. 15; Dozier Dep. (Doc. 68) at 61-63.) Verbal had a long criminal history,[3] and Sergeant Dozier believed that a drug charge could have elevated Verbal to habitual status. (Defs.' Mem. Ex. 15.) Sergeant Dozier initiated a complaint against Plaintiff for her handling of the incident.[4] (Id. Ex. 16.) Captain Carol Wright conducted the internal investigation and interviewed Plaintiff. (Id. Ex. 16-

---

[3] Verbal's 67-page criminal history includes multiple drug-related offenses, ranging from misdemeanor possession of drug paraphernalia to felony possession of a controlled substance. (Verbal Certified Criminal R. (Doc. 68) at 13, 16-17, 20, 25, 31.)

[4] Nothing in the record suggests that Sergeant Dozier and Plaintiff had a contentious working relationship or any kind of history that might have prompted Sergeant Dozier to file the complaint for an illegitimate purpose. The complaints that Plaintiff had previously filed against male officers did not involve Sergeant Dozier. (Defs.' Mem. Exs. 24, 27.)

17.) Following the investigation, Captain Wright determined that Plaintiff had violated numerous General Orders and recommended that Plaintiff be suspended for five days and then dismissed from the department. (Id. Ex. 16.; Wright Dep. (Doc. 68) at 48.) Defendant Letteney reviewed the investigation findings, Captain Wright's conclusion, and the recommended disciplinary action. (Id. Ex. 16.) He met with Jane Dreher, the Director of Administrative Services for the Town of Southern Pines, who approved of the recommended discipline as conforming to the Town's policy. (Dreher Dep. (Doc. 68) at 39.) Plaintiff was suspended with a recommendation to Town Manager Reagan Parsons that her employment be terminated. (Defs.' Mem. Ex. 2.) Plaintiff received a letter on October 26, 2007, detailing the results of the internal investigation and notifying her of the disciplinary action that would be imposed. (Id.) Shortly after Plaintiff's suspension took effect, but prior to a decision regarding her termination, she submitted a letter of resignation. (Defs.' Mem. Ex. 20.) In that letter, Plaintiff stated that she believed she had "been dealt with in an extremely harsh manner on an issue that was my only question in judgement [sic] in over six years of service to the Southern Pines Police Department and the Town of Southern Pines." (Id.) Plaintiff filed an EEOC complaint on December 21, 2007, alleging discrimination and

retaliation. (Defs.' Mem. Ex. 23.) She filed this action on March 17, 2009.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate if an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is "material" if its truth or falsity might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). A dispute regarding a material fact is "genuine" if sufficient evidence exists such that a reasonable jury could resolve the dispute in favor of either party. Id. "Mere allegations" in support of a party's pleadings without "any significant probative evidence" to support those allegations do not provide sufficient evidence to allow a reasonable jury to resolve a dispute in favor of that party. Id.; see also Brown v. Sears Automotive Center, 222 F.Supp.2d 757, 761 (2002 M.D.N.C.) ("[T]he non-moving party cannot rely solely on unsupported assertions to demonstrate that a genuine issue of material fact exists."). Put another way, simply showing some "metaphysical doubt as to the material facts" is not sufficient to establish a

genuine dispute. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In considering whether a genuine issue of material fact exists, the court must be careful not to weigh the evidence or make credibility determinations. <u>Anderson</u>, 477 U.S. at 250. Instead, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party. <u>Id.</u> at 255.

In the context of an employment discrimination case, courts must take special care, since summary judgment is rarely appropriate when a particular state of mind is at issue. <u>Ballinger v. North Carolina Agricultral Extension Service</u>, 815 F.2d 1001, 1005 (4th Cir. 1987) (<u>quoting</u> <u>Charbonnages de France v. Smith</u>, 596 F.2d 406, 414 (4th Cir. 1979)). However, the fact that motive is at issue does not mean that summary judgment is never appropriate in an employment discrimination case, since a moving party may still be able to show that no genuine issue of material fact exists. <u>Ballinger</u>, 815 F.2d at 1005 (<u>quoting</u> <u>Int'l Woodworkers of America v. Chesapeake Bay Plywood Corp.</u>, 659 F.2d 1259, 1272 (4th Cir. 1981)).

**III. Title VII Claims Against Defendant Town of Southern Pines**

**A.    Sex Discrimination**

Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer . . . to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1) (2006). To survive summary judgment, "a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that sex . . . discrimination motivated the employer's adverse employment decision." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc)). Alternatively, the plaintiff may "proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id. at 285; see Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973). Plaintiff does not offer any direct evidence, relying instead on the latter method of proof. (Pl.'s Br. 6.)

In this case, Plaintiff was suspended with a recommendation of dismissal for violating police department rules and procedures. (Defs.' Mem. Ex. 2.) Although she ultimately resigned before her employment was terminated, Plaintiff alleges that she was disciplined more severely than male officers who engaged in comparable misconduct, and that the imposed discipline was more severe because Plaintiff is a woman. (Pl.'s Br. 7.)

Discriminatory discipline is actionable under Title VII, and case law has adapted the McDonnell Douglas scheme of proof to that context. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985). When a plaintiff alleges discrimination in the enforcement of employee discipline, "the plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." Cook, 988 F.2d at 511 (citing Moore, 754 F.2d at 1105-06). Once this prima facie case has been established, then at the second step the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its adverse employment action." Lettieri v. Equant, Inc., 478 F.3d 640, 646 (4th Cir. 2007) (quoting Hill, 354 F.3d at 285). If the defendant offers a legitimate explanation, then the burden shifts back to the plaintiff at the third step to prove by a preponderance of the evidence that the defendant's articulated reason is mere pretext. Id. at 1106. "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff."

<u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d 289,

294 (4th Cir. 2010) (<u>quoting</u> <u>Burdine</u>, 450 U.S. at 256).

Plaintiff is a woman and is therefore a member of a

protected class under Title VII, satisfying the first element of

the prima facie case. With respect to the second and third

elements, Plaintiff proffers as comparators five male officers

who were employed by the Southern Pines Police Department around

the same time as Plaintiff: Male Officers 6, 15, 34, 37, and 38.

(Pl.'s Br. 8.) She claims that these officers engaged in

comparable misconduct, yet they were disciplined less severely.

(<u>Id.</u> at 10-13.) The similarity of the conduct is the key inquiry

at the second stage.

> While exact symmetry between Plaintiff's situation or
> actions and those of others is not required, they must
> be materially similar. <u>See</u> <u>Moore</u>, 754 F.2d at 1107
> (misconduct must be of "comparable seriousness" in
> disparate discipline comparison). It is the task of
> the Court to assess the relative similarity of conduct
> or misconduct relied on by the parties at summary
> judgment.

<u>Jenks v. City of Greensboro</u>, 495 F.Supp.2d 524, 528 (M.D.N.C.

2007). The court in <u>Moore</u> recognized that this inquiry assigns

to lower courts "the difficult, but not unfamiliar, task of

assessing the gravity of offenses on a relative scale. . . . As

in other contexts, the comparison can be made in light of the

harm caused or threatened to the victim or society, and the

culpability of the offender." <u>Moore</u>, 754 F.2d at 1107 (internal

citations and quotation marks omitted). The <u>Moore</u> case provides

some additional guidance insofar as it too dealt with disciplinary enforcement in a police department. Within that context, the court determined that "a principled determination of 'comparable seriousness' required at least initial deference to the system of offenses created by the police department." Id. at 1108.

The Town of Southern Pines Police Department has promulgated General Orders ("GOs") that govern conduct of the Town's officers. (See, e.g., Pl.'s Decl. (Doc. 68) Ex. D at TOSP 306.) Plaintiff's disciplinary action letter states that she was suspended pending termination for violating a total of nine rules, falling within three different General Orders, as follows:

- General Order 86-5 "Evidence/Property Handling Procedures"
  - o Section IIIA - Evidence collection, packaging, handling, processing
  - o Section IIIB - Completion of reports and property control forms
  - o Section IV - Procedures for turning in evidence
  - o Section V - Requests for evidence processing
  - o Section VIII - Disposition of evidence
- General Order 301-06 "Rules and Regulations"
  - o Section IV(B)(1) - Performance and attention to duty
  - o Section IV(B)(24)(e) - Incompetence
  - o Section IV(E)(6) - Reporting information regarding criminal activity
- General Order 414-06 "Escorts"
  - o Section V(C) - Transportation of civilians

(Defs.' Mem. Ex. 2.)

Plaintiff does not deny the conduct for which she was suspended, claiming only that her actions were justified as being either within her discretion as an officer or conduct that was

undertaken routinely by other officers. (Pl.'s Br. 8-13.) She
defends her conduct on the grounds that male officers who have
engaged in comparable or even more serious conduct were not
disciplined as harshly. (Id.) However, no officer that
Plaintiff has put forth as a comparator engaged in conduct of a
comparable seriousness such that an inference of discrimination
is raised. No comparator violated the same GO provisions that
Plaintiff violated, as no comparator was found to have improperly
processed evidence or failed to report possible criminal
activity. Furthermore, no comparator violated as many GO
provisions.

Of the five comparators that Plaintiff has identified, only
one, Male Officer 15, was the same rank as Plaintiff (Master
Patrol Officer) at the time of his violations. (Pl.'s Br. Exs.
31, 39-45.) Male Officer 15 violated a single GO, 308-06(IV)(K)
(Firearms Security), on two separate occasions. (Id.) He
received a written warning for the first violation (leaving a
submachine gun unattended during a police training exercise) and
a two-day suspension for the second (leaving his assigned firearm
in the police department restroom). (Id.) Male Officer 34 was
involved in the same police training incident as Male Officer 15
and also received a written warning for leaving his submachine
gun unattended. (Id. Ex. 31.) On a separate occasion, Male
Officer 34 violated GO 307-06(VI)(G) (Readiness and Safety of

EDMT) by leaving a Taser unattended on a desk in the police station instead of checking it back in properly. (_Id._ Ex. 32.) He was required to attend a counseling session after that incident. (_Id._) Plaintiff emphasizes in her brief the potential harm to the public and liability to the Town that could have resulted from these weapons policy violations. (_Id._ at 12-13.) However, even assuming similarity in the "harm caused," _Moore_, 754 F.2d at 1107, there is a difference in "culpability," _id._, between what appears to be a negligent violation of a GO (i.e., leaving a firearm unattended) and a knowing violation (i.e., intentional destruction of an unknown substance that "appeared to be a controlled substance"). A negligent violation shows some degree of carelessness, while an intentional act reflects a disregard for the rules of conduct.

Male Officer 6's file contains no mention of any GO that he violated, but it does include a related complaint against a female officer who left a Taser unattended, in violation of a GO. (Pl's Br. Ex. 55 at TOSP 3114-16.) The GO violation was just one of numerous instances of misconduct charged against this female officer, including failing to properly investigate an incident of vandalism, insubordination, and excessive personal use of internet at work. (_Id._) The officer was given a written warning, consistent with the Town's progressive discipline policy. (_Id._) That a _female_ officer violated a GO and was

disciplined consistently with male officers further undermines Plaintiff's assertion that an inference of discrimination can be drawn from these comparators.

Plaintiff apparently considers Male Officer 38 the worst offender, having noted in her brief that he "takes the cake" with a variety of offenses, including public intoxication, operating his personal vehicle with expired insurance and registration, failing to attend a mandatory training, and failing to include vital information in a missing person's report. (Pl.'s Br. 11; Exs. 69-77.) Though his file contains a number of complaints and warnings corresponding to these offenses, it only identifies a single GO that Male Officer 38 was found to have violated, and that was with regard to off-duty conduct. (Pl.'s Br. Ex. 70 at TOSP 5381.) Male Officer 38 was disciplined pursuant to the Town's policy, receiving written warnings and suspensions before ultimately being recommended for dismissal. (Id. at TOSP 5367.)

Plaintiff has failed to put forth any comparators whose misconduct was sufficiently comparable to her own under the standard articulated in Moore such that a jury could fairly infer discrimination under Title VII. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)("[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" (quoting Teamsters v. United States, 431 U.S. 324,

358 (1977))). Therefore, she cannot establish a prima facie case of disparate discipline and cannot prevail on her claim of discrimination under Title VII.

## B.    Retaliation

In addition to making it unlawful for employers to discriminate against employees, Title VII bars employers from taking adverse action against an employee in retaliation for "either participating in a Title VII proceeding or opposing an employer's discriminatory practices." Shoaf v. Kimberly-Clark Corp., 294 F.Supp.2d 746, 753 (M.D.N.C. 2003) (citing 42 U.S.C. § 2000e-3(a) (2006)). A claim for retaliation under Title VII proceeds in much the same way as a Title VII discrimination claim. A plaintiff may rely on indirect evidence, and, in this case, Plaintiff seeks to provide indirect evidence through the McDonnell Douglas scheme of proof. In order to establish a prima facie case of retaliation, Plaintiff must show: (1) that Plaintiff has engaged in a protected activity; (2) that the employer took some adverse employment action against Plaintiff; and (3) that there is some causal connection between Plaintiff's activity and the adverse action. Hill, 354 F.3d at 298. If Plaintiff can produce sufficient evidence to make out a prima facie case, then the burden shifting proceeds as it does in the discrimination context. See discussion supra Part III.A.

Briefly addressing the second element of the prima facie case, although Plaintiff's employment ultimately ended in her resignation, she had been suspended for five days with a recommendation for termination. This employment action is materially adverse under the expanded scope of that element as set forth by the Supreme Court in Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). Defendants do not dispute that Plaintiff has suffered an adverse employment action. (Defs.' Mem. 9.)

Under the first element of the prima facie case of retaliation, Plaintiff must show that she has engaged in protected activity. Title VII specifies the types of activities that are protected from an employer's retaliatory actions. An employer may not retaliate against an employee because that employee has "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a) (2006); see Shoaf, 294 F.Supp.2d at 754. Plaintiff alleges that she engaged in three specific instances of protected activity: (1) her September 2004 deposition testimony in a prior sex discrimination suit by a female police officer against the Town; (2) her December 2005 written complaint to Defendant Letteney upon his hiring as Chief of Police; and (3)

her August 2007 oral complaint to Defendant Letteney. (Pl.'s Br.
25.) Testifying in a Title VII proceeding is explicitly
designated protected activity by the statute; therefore,
Plaintiff's deposition testimony in a former co-worker's Title
VII discrimination suit is protected activity. Laughlin v.
Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir.
1998). Though the deposition testimony excerpted in the record
reveals that Plaintiff testified she personally had never felt
harassed or subjected to discrimination (Defs.' Mem. Ex. 32), the
mere fact of her participation in the proceeding is enough to
deem it protected activity. See 42 U.S.C. § 2000e-3(a).

The 2005 complaint to Defendant Letteney consisted of
Plaintiff's typewritten notes that she discussed with Defendant
Letteney in their initial meeting. (Pl.'s Br. 25.) Plaintiff
specifically mentioned in those notes that she felt that women in
the department were treated disrespectfully by their male
colleagues, and that male officers made rude and belittling
comments directed toward female officers. (Defs.' Mem. Ex. 35.)
The case law provides that "[p]rotected activity under the
opposition clause includes 'utilizing informal grievance
procedures as well as staging informal protests and voicing one's
opinions in order to bring attention to an employer's
discriminatory activities.'" Shoaf, 294 F.Supp.2d at 754
(quoting Laughlin, 149 F.3d at 259). Plaintiff's notes can be

construed as informally bringing attention to her employer's discriminatory practices as to female officers, and further to the police department's failure to adequately address the situation or hold the offending male officers responsible. (Defs.' Mem. Ex. 35.) Likewise, Plaintiff's August 2007 conversation with Defendant Letteney could fall into the category of an informal complaint, as she complained of sex discrimination in the workplace, specifically that she had been denied opportunities because of her gender. (See Defs. Mem. Ex. 23 at 1 ("I told [Defendant Letteney] that I was the only member of the special response team who was not permitted to participate in raids by the team . . . . Another example of unequal treatment is that I was not routinely assigned an officer trainee even though I have been a certified field training officer for several years.").) This court finds that Plaintiff has established that she engaged in protected activities.

At the final step of the prima facie case, Plaintiff must show a causal connection between her participation in these activities and the adverse employment action taken against her. Hill, 354 F.3d at 298. With regard to her deposition testimony, Plaintiff has presented no evidence other than her own speculation that Defendant Letteney was even aware of that activity. (Pl.'s Dep. (Doc. 59) Vol. II at 285); see Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998)

(finding that Plaintiff failed to prove causation where she presented no evidence that the supervisor who fired her knew of Plaintiff's prior discrimination charge). Her deposition took place in September 2004, more than a year before Defendant Letteney joined the force, and more than three years prior to her suspension. Plaintiff was promoted from Patrol Officer to Master Patrol Officer just a few months after she testified. (Defs.' Mem. Ex. 6.) And though Plaintiff was subpoenaed in July 2007 to testify at the trial, the case did not make it to that stage, so Plaintiff did not participate further in the proceeding. (Defs.' Mem. 15.)

Plaintiff's initial complaint to Defendant Letteney was likewise nearly two years before the adverse employment action. However, Plaintiff alleges that the closeness in time between her last protected activity (the August 2007 complaint to Chief Letteney) and the date of her suspension (October 2007) is sufficient to infer causation. (Pl.'s Br. 25-26.) She bases this proposition on the Fourth Circuit's decision in Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir. 1989), in which that court held that the employer's awareness that the plaintiff had filed a discrimination charge, coupled with a short time span between the plaintiff filing the charge and being terminated, was sufficient to satisfy the burden of establishing a prima facie case. Id. at 457. Viewing the facts in the light most favorable

to Plaintiff, the court assumes that the substance of the August 2007 complaint is as Plaintiff has recounted it.[5]  This court finds that Plaintiff has put forth sufficient evidence to establish a prima facie case.

Once Plaintiff establishes a prima facie case, the burden shifts to Defendant to show that it had a legitimate, nonretaliatory reason for suspending Plaintiff and recommending her termination.  Shoaf, 294 F.Supp.2d at 756 (citing Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)).  In examining a defendant's reason for taking an adverse action, the court is required only "to consider whether [the] proffered reason was legitimate.  Whether to consider less severe alternatives is a judgment call, and Defendant is entitled to exercise its judgment as long as it is not a pretext used to conceal unlawful retaliation."  Bullard v. Panasonic Corp., 418 F.Supp.2d 802, 815 (E.D.Va. 2006), aff'd, 193 Fed. Appx. 260 (4th Cir. 2006). Defendant maintains that it had a legitimate, nonretaliatory reason based on Plaintiff's misconduct with respect to her handling of James Verbal's arrest and the substance seized from his person.  This court finds that the evidence in the record supports Defendants' assertion.

---

[5] In reaching the conclusion that Plaintiff has established a prima facie case, this court has considered the August 2007 complaint individually as well as a pattern of activity that would include all of the complaints.

With regard to the conduct itself, Plaintiff acknowledges the actions for which she was disciplined, though she denies knowing the substance she threw away was crack. (Pl.'s Br. 10.) She asserts that the harm and her culpability are minimal and that her training and experience led her to believe that her conduct was reasonable under the circumstances. (Id.) Above all, she emphasizes that male officers who violated department policies were not fired. (Id. at 12.) But Plaintiff's belief that the discipline was too harsh does not render Defendants' articulated reason illegitimate. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) ("[A] showing of a difference of opinion, coupled with [Plaintiff's] conclusory allegations of [discrimination], cannot reasonably support the conclusion that [Plaintiff's] discharge was motivated by [discriminatory] animus."); Bonds v. Leavitt, 647 F.Supp.2d 541, 565 (D.Md. 2009) ("[A] plaintiff does not raise an inference of discrimination merely by challenging the wisdom of the employer's business decision to discharge her."); Julsaint v. Corning, Inc., 178 F.Supp.2d 610, 618 (M.D.N.C. 2001) ("[T]he perceptions of the employee are irrelevant in determining whether the employer's proffered reason was a pretext for discrimination." (citing Hawkins, 203 F.3d at 280)).

The Town's multi-step disciplinary procedure provides further support that the disciplinary action was not imposed for

an illegitimate reason. In Plaintiff's case, Sergeant Dozier initiated the internal complaint against Plaintiff with regard to her conduct on October 17, 2007. That conduct was investigated by Captain Carol Wright, who made the disciplinary recommendation after finding that Plaintiff had violated numerous GOs.[6] (Defs.' Mem. Exs. 16, 17; Wright Dep. (Doc. 68) at 48.) Defendant Letteney then reviewed the results of the investigation and the recommendation before making his final decision to suspend Plaintiff and recommend her termination. (Defs.' Mem. Ex. 16.) He met with Jane Dreher,[7] the Town's Administrative Services Director, who reviewed the disciplinary action and confirmed that it was consistent with the Town's discipline policy. (Dreher Dep. (Doc. 68) at 39.) Defendants have also provided statements from other Southern Pines police officers, including officers who were present at the station when Verbal was arrested, that Plaintiff's conduct did not conform to their understanding of the department's orders or accepted police procedures. (Campbell Decl. (Doc. 59 Ex. 9) ¶¶ 16-20, 33, 40-42; Embler Decl. (Doc. 59

---

[6] The fact that Captain Wright, the officer who recommended the disciplinary action, is a female tends to undermine Plaintiff's claims of discrimination and retaliation. See Dewitt v. Mecklenburg County, 73 F.Supp.2d 589, 598-99 (W.D.N.C. 1999) (collecting cases and finding that "where a number of the challenged employment decisions were made or implemented by a member of Plaintiff's own gender . . .[,] Plaintiff's unsupported, self-serving allegations are particularly unpersuasive").

[7] Jane Dreher is also a female. See supra note 6.

Ex. 45) ¶¶ 8-10; Skelton Decl. (Doc. 59 Ex. 11) ¶¶ 5-6, 13.)
Given the abundance of evidence in the record that Plaintiff's
conduct violated the police department's rules and regulations,
Defendants have met their burden of stating a legitimate,
nonretaliatory reason for disciplining Plaintiff. See Gibson v.
Marjack Co., Inc., No. AW-08-3424, ___ F.Supp.2d ___, 2010 U.S.
Dist. LEXIS 61176, at *16-17 (D.Md. June 21, 2010) ("Violation of
company policy has been recognized as a legitimate reason for
terminating an employee." (citing Brantley v. Nationwide Mut.
Ins. Co., No. RDB-07-1322, 2008 U.S. Dist. LEXIS 56083, at *37
(D.Md. July 22, 2008))); Cross v. Bally's Health & Tennis Corp.,
945 F.Supp. 883, 889 (D.Md. 1996) (holding that Plaintiff's
excessive lateness in violation of company policy was a
legitimate, nondiscriminatory explanation for his termination).

As Defendants have put forth a legitimate reason for
suspending Plaintiff, the burden shifts back to Plaintiff to
prove that Defendants' proffered explanation is just a pretext
for their underlying retaliatory intent. Shoaf, 294 F.Supp.2d at
757-58. "In order to demonstrate that Defendant's proffered
reason is pretextual, Plaintiff must show that discharging
Plaintiff for violating [department] policy is unworthy of belief
and that Defendant was 'actually and unlawfully motivated by
retaliation in its employment decisions.'" Bullard, 418
F.Supp.2d at 815 (quoting Newby v. Whitman, 340 F.Supp.2d 637,

662 (M.D.N.C. 2004)). "[M]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee." <u>Williams</u>, 871 F.2d at 457. Likewise, though temporal proximity may be sufficient to state a prima facie case of retaliation, "Plaintiff cannot rely on temporal proximity alone to establish <u>pretext</u>." Shoaf, 294 F.Supp.2d at 758 (emphasis added).

Plaintiff's evidence does not support the proposition that Defendants' reason is pretextual. Plaintiff has alleged discriminatory animus, but she has not presented evidence of it. "A plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." <u>Williams</u>, 871 F.2d at 456. The evidence shows that Defendants had, at various times, responded positively to Plaintiff's complaints by taking steps to address some of the perceived inequalities that Plaintiff brought up in her August 2007 conversation with Defendant Letteney. She complained at that time of not being assigned trainees; however, the uncontroverted evidence is that she was assigned two trainees after that meeting and was supervising a trainee officer on the very night that the incident with Verbal took place. (Compl.

(Doc. 1) ¶ 45; Defs.' Mem. Ex. 1.)  Plaintiff also complained to Defendant Letteney that she was not permitted to participate in SRT operations, but the evidence shows that she participated in multiple training exercises, including at least one that took place after her meeting with Letteney.  (Compl. (Doc. 1) ¶ 45; Polidori Decl. (Doc. 59 Ex. 40) Ex. B.)  That Defendants apparently took steps to address Plaintiff's grievances renders it unlikely that Defendants bore animosity toward Plaintiff for making those complaints.  See Bullard, 418 F.Supp.2d at 815 ("At all times, Defendant treated Plaintiff's prior complaints as legitimate and took immediate corrective action.  Thus, it does not follow that Defendant harbored an unlawful animus against Plaintiff for filing them . . . .").

Plaintiff alleges that the investigation into her conduct was cursory and did not proceed according to protocol.  (Pl.'s Br. 19-21.)  To support this proposition, she cites the Town's progressive discipline policy, claiming that she did not receive oral or written warnings about evidence collection or about transporting suspects back to town.  (Id.)  However, the evidence shows that neither Captain Wright nor Defendant Letteney disregarded the progressive discipline policy in Plaintiff's case.  The Employee Handbook for the Town of Southern Pines sets out the progressive discipline policy as consisting first of oral warnings, then written warnings, then suspension, demotion, or

dismissal (Pl.'s Br. Ex. 14 at TOSP 552). It does not state, however, that such a progression shall be followed as relates to each individual violation, as Plaintiff asserts in her brief. (Pl.'s Br. 20 ("The Plaintiff did not receive an oral or written warning about evidence collection or about transporting suspects back to town.").) Though it is unclear from the record whether Plaintiff had ever received oral warnings, she had previously received two written warnings for unrelated violations. (Defs.' Mem. Exs. 37-39.) By the terms of the progressive discipline policy, the Town could take action in the form of suspension, demotion, or dismissal. The policy also provides that an employee may be dismissed after one disciplinary suspension. (Pl.'s Br. Ex. 14 at TOSP 554.)

Plaintiff's assertions that the investigation into her conduct did not follow protocol are not supported by the evidence, nor are they sufficient to meet the evidentiary burden of showing that Defendants' stated reason was mere pretext. Therefore, Plaintiff has not created a genuine issue of material fact for the jury, and her Title VII retaliation claim must be dismissed.

## IV. Section 1983 Claims Against Defendant Town of Southern Pines and Defendant John Letteney

Plaintiff alleges violations of 42 U.S.C. § 1983 insofar as Defendant Letteney's actions deprived her of her First Amendment

right to free speech and her Fourteenth Amendment rights to equal protection and due process. (Compl. (Doc. 1) ¶¶ 114-17.) Plaintiff claims that the Town of Southern Pines is liable under § 1983 on the basis of vicarious liability. (Compl. (Doc. 1) ¶¶ 107-10.) Before examining Plaintiff's individual claims, this court will address whether Defendant Town of Southern Pines can be subjected to liability under § 1983.

In <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978), the Supreme Court held that a municipality may be considered a "person" for purposes of § 1983 liability when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Id.</u> at 690. Plaintiff has not presented evidence or put forth arguments that the Town of Southern Pines has adopted an official policy of gender discrimination. To the contrary, the evidence shows that the Town has implemented policies and procedures for employees that explicitly prohibit acts of gender discrimination and retaliation. (Pl.'s Br. Ex. 14 at TOSP 644.) Even with an official anti-discrimination policy in place, the Town can still be subjected to § 1983 liability if Plaintiff can prove that a "custom or practice" of discrimination existed. <u>Greensboro Prof. Fire Fighters Ass'n v. City of Greensboro</u>, 64 F.3d 962, 966 (4th Cir. 1995). Plaintiff must show that the custom is "widespread,

pervasive and 'so permanent and well-settled as to constitute a custom or usage with the force of law.'" _Id._ (quoting _City of St. Louis v. Praprotnik_, 485 U.S. 112, 127 (1988))(internal quotation marks omitted). "Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." _Spell v. McDaniel_, 824 F.2d 1380, 1391 (4th Cir. 1987). Even assuming Plaintiff's allegations of discrimination in the police department rise to the level of a "custom or usage," Plaintiff has not shown that the Town's policymakers knew of the custom and deliberately failed to take corrective action.[8] Finally, with regard to the averments set forth in Plaintiff's Complaint that the Town of Southern Pines is vicariously liable for Defendant Letteney's actions (Compl. (Doc. 1) ¶¶ 107-09), "a § 1983 claim against a municipality cannot succeed under the doctrine of _respondeat superior_." _Greensboro Prof. Fire Fighters Ass'n_, 64 F.3d at 964 (citing _Monell_, 436 U.S. at 690).

---

[8] Though Plaintiff alleges in her complaint that Defendant Letteney was the "final policy maker and decision maker for all matters concerning employment as a police officer" (Compl. (Doc. 1) ¶ 104), she has presented no evidence to that effect, she has not countered Defendants' assertion that the town council has final policymaking authority under North Carolina law (Defs.' Mem. 26), and she has not claimed that the town council was liable for any alleged violations.

Plaintiff's § 1983 claims against the Town of Southern Pines must fail, a point Plaintiff seems to concede, as she did not address in her brief any of these claims as they relate to the Town. The court will analyze Plaintiff's § 1983 claims with respect to Defendant Letteney only.[9]

## A. Equal Protection Claim

Section 1983 equal protection claims are subject to the same analysis as Title VII discrimination claims. Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989). Therefore, the discussion with reference to Defendant Town of Southern Pines in Section III.A, supra, is applicable to Defendant Letteney in the equal protection context. For the reasons stated above, Plaintiff has not presented evidence sufficient to show that there is a genuine issue of material fact such that a jury could find that Defendant Letteney discriminated against her on the basis of her gender.

## B. Due Process Claim

As an initial matter, the court notes that Plaintiff did not present any evidence on this claim, nor did she counter any of Defendants' arguments that the claim should be dismissed. "A party opposing a properly supported motion for summary judgment

---

[9] Defendants contend in their memorandum that Defendant Letteney is shielded from liability on the basis of qualified immunity. (Defs.' Mem. 26.) Because the court finds that Plaintiff has failed to state a prima facie case on each of the § 1983 claims, as discussed in the following sections, the court declines to address the qualified immunity argument.

may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (citing Fed. R. Civ. P. 56(e)). Notwithstanding Plaintiff's failure to put forth evidence on this claim, the court will address it briefly based on the evidence in the record.

In order to establish a claim under the Fourteenth Amendment Due Process Clause, Plaintiff must show that she was deprived of a constitutionally protected property or liberty interest by some form of state action. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). Plaintiff alleges in her Complaint that Defendant Letteney violated her Fourteenth Amendment due process rights by "placing false information in official files without a name-clearing hearing when [Defendant Letteney] knew or should have known that there was a likelihood that prospective employers or the public would have access to the official files." (Compl. (Doc. 1) ¶ 117.) The language of this allegation implicates a liberty interest claim, in that Plaintiff is claiming Defendant made available to the public false information about her.[10] It is unnecessary to evaluate any evidence on this claim, however, because the Fourth Circuit has

---

[10] Nowhere in the pleadings has Plaintiff alleged a deprivation of a property interest under the Due Process Clause, nor does the language in her complaint implicate such a deprivation. The court therefore declines to analyze any potential property interest claim.

made it clear that such a claim cannot succeed if an employee has resigned. "[A] public employer's stigmatizing remarks do not deprive an employee of a liberty interest unless they are made in the course of a discharge or significant demotion." Stone, 855 F.2d at 173 n.5 (citing Paul v. Davis, 424 U.S. 693, 710-11 (1976). In Stone, the court's finding that the plaintiff had not been discharged but had voluntarily resigned ended the inquiry into the plaintiff's liberty interest claim. Id. ("Our finding that Stone was not discharged from his public employment but resigned voluntarily . . . effectively disposes of any liberty interest claim he might assert."). In the present case, the evidence and even Plaintiff's own pleadings indicate that she resigned voluntarily. (Compl. (Doc. 1) ¶ 60; Defs.' Mem. Exs. 20-22; Pl. Sworn Statement to CJSD (Doc. 68) at 6.) Her subsequent characterization of the event as a "firing" does not change the fact that she resigned. (Compl. (Doc. 1) ¶ 60; Defs.' Mem. Ex. 21; Pl.'s Br. 22, 29.) Additionally, Plaintiff has not exhausted all administrative remedies available to her. Although she alleges that Defendants deprived her of due process by denying her the opportunity for a name-clearing hearing, the evidence shows that such a hearing was offered to Plaintiff after she filed this lawsuit, and she did not respond. (Defs.' Mem. Ex. 47.)

C.   **First Amendment Retaliation Claim**

In addition to guaranteeing a right of affirmative free speech, the First Amendment protects individuals who exercise that right from retaliation by public officials.  See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2004) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)).  In order to prevail on a First Amendment retaliation claim, Plaintiff must show that (1) she engaged in protected First Amendment activity; (2) Defendants took some action that adversely affected Plaintiff's First Amendment rights; and (3) a causal relationship exists between Plaintiff's protected activity and Defendants' conduct.  Id. Plaintiff has not specifically identified in her brief the speech that allegedly prompted retaliatory action on the part of Defendant Letteney.  (Pl.'s Br. 29-30.)  This court will assume, however, that Plaintiff means to implicate the same activity that forms the basis for Plaintiff's Title VII retaliation claim, namely, the September 2004 deposition testimony, the December 2005 typewritten notes discussed in Plaintiff's meeting with Defendant Letteney, and the August 2007 oral complaint to Defendant Letteney.

Even assuming without deciding that Plaintiff has put forth sufficient evidence on the first two elements of the prima facie case, this court finds that Plaintiff has failed to establish a

causal connection between her protected speech and the adverse employment event. In the First Amendment retaliation context, the causal connection requires a heightened evidentiary showing relative to what is required in a Title VII retaliation claim. See discussion supra Part III.B. Plaintiff must present evidence that her speech was a "substantial or motivating factor" behind the adverse action taken against her. Hughes v. Bedsole, 48 F.3d 1376, 1387 (4th Cir. 1995). Mere proximity in time is not sufficient to show causation. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993) ("Temporal proximity . . . is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim."). Plaintiff has not put forth any evidence that her speech regarding sex discrimination in the police department was a substantial or motivating factor in her suspension. (Pl.'s Br. 29-30.) Nor has Plaintiff pointed to any actions on the part of Defendant Letteney, other than the fact that he upheld Captain Wright's disciplinary recommendation, that would indicate any animus he bore toward her for her prior statements. See Hughes, 48 F.3d at 1388 n.12 ("Hughes points to no conduct Bedsole exhibited towards her, other than the discharge itself, to show that Bedsole harbored any resentment to Hughes because she expressed her concerns about understaffing and improper training."). Instead, Plaintiff relies solely on the fact that a police officer may not be terminated for speaking out on a matter

of public concern and the fact that she was suspended a few months after making a statement about gender differences and discrimination in the police department. (Pl.'s Br. 29-30.) Such a tenuous connection between events is not a sufficient basis for getting to the jury on a First Amendment retaliation claim. Additionally, Plaintiff testified in her 2004 deposition that she had _not_ personally felt harassed or discriminated against in the police department, only that she knew of two other officers who had made such complaints. (Defs.' Mem. Ex. 32.) Because Plaintiff has presented no evidence that her speech regarding sexual harassment and discrimination in the workplace was a substantial or motivating factor in her suspension, her First Amendment retaliation claim must fail.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 58) is hereby **GRANTED**. A judgment in accordance with this opinion will be filed contemporaneously.

This the 12th day of August 2010.

William L. Osteen, Jr.
United States District Judge